LIONEL SAWYER & COLLINS
SAMUEL S. LIONEL (SBN 1766)
slionel@lionelsawyer.com
CHARLES H. McCREA, JR. (SBN 104)
cmccrea@lionelsawyer.com
STEVEN C. ANDERSON (SBN 11901)
sanderson@lionelsawyer.com
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Tel:   702.383.8888
Fax:   702.383.8845

MORGAN, LEWIS & BOCKIUS LLP
MARC J. SONNENFELD*
msonnenfeld@morganlewis.com
1701 Market Street
Philadelphia, Pennsylvania 19103
Tel:   215.963.5000
Fax:   215.963.5001

JOSEPH E. FLOREN*
jfloren@morganlewis.com
BENJAMIN P. SMITH*
bpsmith@morganlewis.com
CHRISTOPHER J. BANKS*
cbanks@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:   415.442.1000
Fax:   415.442.1001

Attorneys for Plaintiff
KAZUO OKADA
* pro hac vice application forthcoming

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KAZUO OKADA, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>WYNN RESORTS, LIMITED, a Nevada Corporation,<br><br>        Defendant. | Case No. 13-CV-00136-JCM-NJK<br><br>**REPLY DECLARATION OF KAZUO OKADA IN SUPPORT OF MOTION TO ENJOIN FEBRUARY 22, 2013 SHAREHOLDER VOTE** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 73064886.1

1

REPLY DECLARATION OF KAZUO
OKADA I/S/O MOTION TO ENJOIN
FEBRUARY 22 SPECIAL MEETING

I, Kazuo Okada, declare as follows:

1. I have personal knowledge of the facts set forth in this declaration and if called upon to do so I could and would competently testify to such matters.

2. Because I am not fluent in English, I have reviewed and approved a Japanese translation of this declaration, a true and correct copy of which is attached hereto as <u>Exhibit A</u>. The verification for this English-language certified translation is attached hereto as <u>Exhibit B</u>.

3. I have always denied the essential claims of the Freeh Report, to the extent they relate to me at all. However, Wynn Resorts declined to give me a copy of that report, and I did not receive a copy of that report until after the Wynn Resorts Executive Committee had already taken final action purporting to redeem the over 24 million shares of Wynn Resorts stock held by my company Aruze USA, Inc. at a substantial discount, and had already made the report both final and public. Even to this day, Wynn Resorts has refused to provide me with the appendix to that report, which supposedly contains the "evidence" on which it is based.

4. I never made a statement at a Wynn Resorts board meeting to the effect that providing gifts to government officials is a recognized or accepted way to conduct business in Asia. Nor have I ever made the statement that such a practice can be effectuated by use of third parties. I have denied these allegations before, and I deny them again. The attributed statements are offensive to me, Asians, and Asian governments.

5. My copy of the minutes of the Wynn Resorts board meeting held on February 24, 2011, when I supposedly made this statement, in fact does not reflect that I made any such statement. Attached hereto as <u>Exhibit C</u> is a true and correct copy of the February 24, 2011 board meeting minutes provided to me in a subsequent board meeting.

6. I have reviewed a Japanese translation of the Freeh report, which reflects significant confusion by my fellow Wynn Resorts board members as to my statements during the February 24, 2011 board meeting. There are at least five different recollections of my supposed statements. Because statements made by me during board meetings are in Japanese, and are required to be translated into English for all other board members, a translation error, a misunderstanding by my fellow board members, or a combination of these things resulted in the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 73064886.1

2

REPLY DECLARATION OF KAZUO
OKADA I/S/O MOTION TO ENJOIN
FEBRUARY 22 SPECIAL MEETING

inaccurate and false attribution to me of approving the use of gifts to induce favorable action by Asian governments.

7.  During the February 24, 2011 board meeting, Ms. Kim Sinatra, a lawyer for Wynn Resorts, did indicate that a review by the Audit Committee had revealed "FCPA risk" for the Company. I understood this comment to mean that the Company's own internal assessment had revealed potential FCPA violations by Wynn Resorts.

8.  I have previously denied to Louis Freeh, and deny again, any effort to bribe PAGCOR officials at any time, and in particular in connection with visits by PAGCOR officials to various Wynn properties in 2010. I told Mr. Freeh at the time that I had no knowledge of most of the hospitality expense reimbursement issues. With respect to one set of expenses concerning a trip to Macau by PAGCOR officials in September 2010, I told Mr. Freeh that I had reprimanded a Universal Entertainment employee after learning of the expenses.

9.  A subsidiary of Universal Entertainment, Tiger Resort, Leisure and Entertainment, Inc., applied for a provisional license regarding the Entertainment City Manila Project solely as a result of the strong urging of PAGCOR officials, who, as I understood from their comments to me, were eager to attract investment into the Philippines. Tiger obtained a provisional license in 2008, and a formal casino license will issue automatically upon the completion of the scheduled construction and investment in the project according to the agreed plans and specifications. Because Tiger would obtain a formal casino license by this proper process, to my understanding there would not even be a reason to provide "gifts" for the purposes of inducing any action by PAGCOR. To the contrary, my understanding has always been that any hotel expense reimbursements for PAGCOR officials made by Universal Entertainment would be only for legitimate business purposes, such as education and training of PAGCOR officials in the operations of major casino resorts of the type that Tiger is building in the Philippines, and dealings with PAGCOR as a customer of Universal Entertainment's gaming machines (which PAGCOR may buy for the casinos that it operates in the Philippines).

10. I had no advance knowledge of the September 2010 expenditures associated with PAGCOR chairman Naguiat's stay at the Wynn Macau casino. I only learned of these expenses

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 73064886.1

3

REPLY DECLARATION OF KAZUO
OKADA I/S/O MOTION TO ENJOIN
FEBRUARY 22 SPECIAL MEETING

later, and corrective action was taken long before the Freeh report was generated.

11.  I understand that Wynn Resorts contends that my reasons for not attending a Foreign Corrupt Practices Act training on October 31, 2011 (when I was on an airplane on my way to Las Vegas), and not signing an amended Code of Conduct, are illegitimate.  In fact, it is the Company's contentions in this regard that are not legitimate.

12.  The Wynn Resorts Code of Conduct was amended in November 2011 in connection with my questioning of Wynn Resorts' Macau operations and investments, as well as Wynn's stated concerns that my Philippine project would pose a competitive threat to Wynn's Macau operations.  Based upon the history of our dealing and discussions on these subjects, the Company's request for me to sign the Amended Code of Conduct was intended to force me to abandon my Philippines opportunity, even though it had previously passed on this opportunity.

13.  I understand that Wynn Resorts' claims that my stated reason for not attending the FCPA training on October 31, 2011 is "absurd" because I attended a board meeting in Las Vegas on the following day, November 1, 2011.  As the Company is well aware and was advised before the fact, however, travel restrictions prevented me from attending the FCPA training live, as I could only arrive in Las Vegas late in the day on October 31, 2011.  My staff informed Wynn Resorts of this travel restriction beforehand.  It was for this reason that I requested a recording of the training session, which I understand Wynn Resorts originally agreed to provide.  Later, however, Wynn Resorts represented that no recording was made and refused to schedule another training session.

14.  I have been licensed by many gaming regulators, and deemed "suitable" as an owner and operator or gaming-related businesses in many jurisdictions allowing for gaming, including Nevada and many other US states and countries.  I have been licensed in Pennsylvania in the past.  I have been licensed (or had my license renewed) in several jurisdictions since Wynn Resorts published the Freeh report and its Executive Committee supposedly found me "unsuitable."  I am confident that I will continue to be deemed suitable and receive licenses in the future, notwithstanding the efforts of Wynn Resorts.

15.  Had the Company asked, I would have told them I am confident I can become

1 licensed in Pennsylvania and Massachusetts and would be happy to put them in touch with the counsel who handles such matters for me and my companies.

16. As indicated in my prior declaration, I recently came into possession of what appears to be agreements between Mr. Steve Wynn and an individual named "Ho Ho" regarding land rights for the planned resort of Wynn Resorts on the Cotai strip in Macau. I came into possession of these documents independently of my service as a member of the board of directors of Wynn Resorts, as I had never before seen the agreements in my 11 years of service on the board.

17. I wrote to the board of Wynn Resorts regarding these agreements, which are suspicious in several respects, on January 24, 2013. I urged my fellow board members to "Take the high road" and "Do the right thing," as I previously advised Mr. Wynn, by providing documents and explanations for these agreements and by appointing a special investigator. I asked that these tasks be taken within 10 days, or by February 3, 2013.

18. Rather than taking the "high road," and doing the "right thing," the board had the company's lawyer, Ms. Sinatra, responded to my requests by letter. Ms. Sinatra indicated in her letter that Wynn Resorts was "quite concerned" that I had shared the Cotai agreements with the public (and Wynn Resorts shareholders) by attaching a copy of the agreements in legal documents filed in this action. Ms. Sinatra also asked that the agreements be "sealed," which I understand is a process whereby the public is denied access to court records. Ms. Sinatra made these requests even though the Cotai agreements contain no confidentiality marking and no provision regarding their confidentiality. A true and correct copy of Ms. Sinatra's response letter is attached hereto as <u>Exhibit D</u>.

19. Unfortunately, Ms. Sinatra did not address my demand that the board of directors promptly consider the implications of the Cotai agreements, and appoint an independent investigator to examine the dealings of Wynn Resorts in Macau. Instead, Ms. Sinatra indicated that my requests had been placed on the agendas for "upcoming meetings of the Company's Compliance and Executive Committees." Ms. Sinatra provided no dates for these meetings.

20. In further correspondence dated February 6 (Japan time), I asked Ms. Sinatra for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 73064886.1

5

REPLY DECLARATION OF KAZUO
OKADA I/S/O MOTION TO ENJOIN
FEBRUARY 22 SPECIAL MEETING

the specific time and date for these "upcoming meetings," and further requested that Mr. Wynn submit to questioning by the directors, including me, regarding the Cotai agreements. A true and correct copy of this correspondence is attached hereto as Exhibit E. To date, I have received no response to my February 6 letter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on ___02/11___, 2013.

_____
Kazuo Okada