James J. Pisanelli, Esq., Bar No. 4027
JJP@pisanellibice.com
Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
Debra L. Spinelli, Esq., Bar No. 9695
DLS@pisanellibice.com
PISANELLI BICE PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169
Telephone: 702.214.2100
Facsimile: 702.214.2101

Paul K. Rowe, Esq. *(pro hac vice forthcoming)*
pkrowe@wlrk.com
Bradley R. Wilson, Esq. *(pro hac vice forthcoming)*
brwilson@wlrk.com
S. Christopher Szczerban, Esq. *(pro hac vice forthcoming)*
scszczerban@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: 212.403.1000

Robert L. Shapiro, Esq. *(pro hac vice forthcoming)*
RS@glaserweil.com
GLASER WEIL FINK JACOBS HOWARD
AVCHEN & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: 310.553.3000

Attorneys for Wynn Resorts, Limited

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KAZUO OKADA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WYNN RESORTS, LIMITED, a Nevada corporation,<br><br>Defendant. | Case No. 2:13-cv-00136-JCM-NJK<br><br>**WYNN RESORTS, LIMITED'S MOTION TO DISMISS** |

1

Defendant Wynn Resorts, Limited ("Wynn Resorts") hereby moves to dismiss the Complaint filed by Kazuo Okada pursuant to Federal Rule of Civil Procedure 12(b)(6). The Complaint contains a single count – a purported claim against Wynn Resorts under Section 14(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 14a-9 promulgated thereunder. As demonstrated in the accompanying Memorandum of Points and Authorities, however, non-stockholders like Mr. Okada do not have a private right of action under Section 14(a). The Complaint therefore fails to state a claim upon which relief may be granted, and it is subject to dismissal on that basis.

This motion is supported by the accompanying Memorandum of Points and Authorities, the other papers and pleadings on file herein, and any oral argument this Court may choose to consider.

DATED this 19th day of February, 2013.

PISANELLI BICE PLLC

By: /s/ James J. Pisanelli
James J. Pisanelli, Esq., Bar No. 4027
Todd L. Bice, Esq., Bar No. 4534
Debra L. Spinelli, Esq., Bar No. 9695
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

Paul K. Rowe, Esq. *(pro hac vice forthcoming)*
Bradley R. Wilson, Esq. *(pro hac vice forthcoming)*
S. Christopher Szczerban, Esq. *(pro hac vice forthcoming)*
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

Robert L. Shapiro, Esq. *(pro hac vice forthcoming)*
GLASER WEIL FINK JACOBS HOWARD
AVCHEN & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067

Attorneys for Wynn Resorts, Limited

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On February 22, 2013, the stockholders of Wynn Resorts, Limited ("Wynn Resorts" or the "Company") will be asked to vote on the removal of one director, Kazuo Okada, from the Wynn Resorts board of directors (the "Board"). Although he is not a Wynn Resorts stockholder and has no right to vote at the special meeting, Mr. Okada commenced this action on January 24 by filing a single-count Complaint for Violations of Federal Securities Laws and for Injunctive Relief (the "Complaint"). Mr. Okada subsequently moved for a preliminary injunction that would have temporarily enjoined the special meeting. This Court denied that motion at the conclusion of a hearing held on February 15.

Mr. Okada's only purported claim in this action is that Wynn Resorts has provided its stockholders with materially false and misleading proxy materials in connection with the special meeting in violation of Section 14(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 14a-9 thereunder. But as demonstrated by Wynn Resorts in its opposition to Mr. Okada's motion for a preliminary injunction, and as shown below, Mr. Okada is not within the narrowly defined class of persons who may pursue a private right of action under Section 14(a). Only stockholders whose votes are being solicited have a private right of action under that statute – and Mr. Okada is indisputably *not* a stockholder of Wynn Resorts.

Accordingly, putting aside the merits of Mr. Okada's proxy claim – and the claim is entirely without merit – there is simply *no* cause of action under Section 14(a) for a non-stockholder like Mr. Okada. For this reason alone, the Complaint must be dismissed.

## BACKGROUND

### A. The Parties

Wynn Resorts is a publicly-traded Nevada corporation that operates destination resort-casinos in Las Vegas and Macau. (Compl. ¶ 14.) Mr. Okada is a Wynn Resorts director. (*Id.* ¶ 12.) He is also the Chairman and controlling shareholder of Universal Entertainment Corporation ("Universal"), a Japanese corporation. (*Id.*) Mr. Okada also controls Aruze USA, Inc. ("Aruze"), a Nevada corporation wholly owned by Universal. (*Id.*) Until

3

February 2012, when its shares were redeemed and cancelled by the Wynn Resorts Board, Aruze was a 19.66% stockholder of Wynn Resorts.  (*Id.* ¶¶ 23, 36.)

### B.  The Wynn Resorts Board discovers evidence of Mr. Okada's misconduct.

In or about 2008, Mr. Okada began developing a casino resort in the Philippines.  (Compl. ¶ 58.)  Although Wynn Resorts was not a participant, on multiple occasions between 2008 and 2010, Mr. Okada sought to persuade the Company to assume a role in the venture.  (*Id.*)

At a meeting of the Wynn Resorts Board held on November 1, 2011, former Nevada Governor Robert Miller, the Chairman of the Compliance Committee and a Board member, presented his fellow directors with a report on one internal and two independent investigations into Mr. Okada's, Universal's, and Aruze's business activities in the Philippines.  (*Id.* ¶¶ 26-27.)  Governor Miller reported that the evidence uncovered to date raised questions about Mr. Okada's suitability to be affiliated with a gaming corporation and also revealed possible breaches of fiduciary duty by Mr. Okada related to his Philippine development project.  (*Id.* ¶ 27.)

Governor Miller advised the Board that, in light of the preliminary record, the Compliance Committee had retained Louis Freeh of Freeh Sporkin & Sullivan, LLP, a former Director of the FBI and a former federal judge, to conduct a further independent investigation of Mr. Okada's conduct.  (*Id.* ¶ 28.)  Mr. Freeh spent the next three and a half months investigating, with the process culminating in a full-day interview of Mr. Okada by Mr. Freeh in Tokyo on February 15, 2012.  (*Id.* ¶¶ 29-30.)

### C.  Mr. Okada is found "unsuitable" and quarantined.

Mr. Freeh presented a 47-page written report (the "Freeh Report") at a Board meeting held on February 18, 2012.  (Compl. ¶¶ 31, 34 & Ex. A (Freeh Report).)  The Freeh Report found, among other things, "substantial evidence that Mr. Okada, his associates and companies have apparently been engaging in a longstanding practice and pattern of committing prima facie violations of anti-bribery laws, particularly the FCPA" (Compl. Ex. A (Freeh Report) at 43) and that "Mr. Okada strongly believes and asserts that when doing business in Asia, he should be able to provide gifts and things of value to foreign government officials" (*id.* at 1).

At the conclusion of the Board's discussions of the Freeh Report at the February 18 meeting, the Board unanimously (other than Mr. Okada) determined that Mr. Okada, Universal, and Aruze were "Unsuitable Persons" within the meaning of the Company's Articles of Incorporation, on the ground that their continued affiliation with Wynn Resorts through Aruze's stock ownership was "likely to jeopardize" the Company's existing and potential future gaming licenses. (Compl. ¶ 36 & Ex. A (Freeh Report) at 8.) Based on that determination, and pursuant to the Articles, the Board redeemed Aruze's shares, effective immediately, and caused the Company to issue a promissory note in exchange. (Compl. ¶ 36.) The Board also took steps to quarantine Mr. Okada, and protect Wynn Resorts from any undue influence by him, by creating an Executive Committee – from which "unsuitable" directors were excluded – to manage the Company's business and affairs. (*Id.* ¶ 37.)

**D.      Wynn Resorts calls a special meeting to remove Mr. Okada from the Board.**

As disclosed in the proxy statement, part of Wynn Resorts' strategic plan is "to expand its operations into new jurisdictions" – namely, Pennsylvania and Massachusetts – where the Company has applied for approval from state gaming authorities to build and operate major projects. (Compl. ¶ 48 & Ex. C (Proxy Statement) at 9.) Without these licenses, "the Company will not be able to pursue its planned expansion" into these jurisdictions, which "management and the Executive Committee believe are important to the Company's future growth and profitability." (Compl. Ex. C (Proxy Statement) at 9.)

The proxy statement explains that in light of Mr. Freeh's findings and the Board's unsuitability determination, "the Company cannot support and advance applications for gaming licenses on behalf of Mr. Okada, and believes that Mr. Okada would not be eligible to receive such licenses in any event" – and that therefore Wynn Resorts has deemed it necessary to call the special meeting for the purpose of removing Mr. Okada from the Board. (*Id.*)

On January 3, 2013, Wynn Resorts filed a definitive proxy statement announcing the date of the special meeting – February 22, 2013 – and providing extensive disclosures regarding the Background of the Removal Proposal and the Reasons for the Removal Proposal. (Compl. Ex. C (Proxy Statement) at 1, 3-9.) Mr. Okada filed the Complaint in this action on January 24, in

which he alleged that the definitive proxy statement was materially false and misleading in violation of Section 14(a) and Rule 14a-9 promulgated thereunder.  (*E.g.*, Compl. ¶¶ 95-99.)

## ARGUMENT

### MR. OKADA DOES NOT HAVE A PRIVATE RIGHT OF ACTION UNDER SECTION 14(a).

The language of Section 14(a) unquestionably does not provide an express right of action to non-stockholders like Mr. Okada.  *See* 15 U.S.C. § 78n(a).[1]  Mr. Okada thus does not have any cause of action under Section 14(a) unless this Court *implies* a private right of action in his favor.

Several decades ago, the Supreme Court recognized a limited private right of action under Section 14(a) for stockholders whose proxies were solicited with materials that contained material misstatements or omissions.  *See Mills* v. *Elec. Auto-Lite Co.*, 396 U.S. 375, 383-85 (1970); *J.I. Case Co.* v. *Borak*, 377 U.S. 426, 432-33 (1964).  But since it decided *Mills* 43 years ago, the Supreme Court has not expanded the scope of that private right of action any further.  When it was asked to do so in *Virginia Bankshares, Inc.* v. *Sandberg* – a case involving minority stockholders whose votes were not required to effectuate a proposed merger – the Court refused and made a point to "recognize the hurdle facing any litigant who urges us to enlarge the scope of the action beyond the point reached in *Mills*."  501 U.S. 1083, 1104 n.11 (1991).

*Virginia Bankshares* is part of a long and unbroken line of Supreme Court decisions – all announced after *Borak* and *Mills* – which make clear that courts should imply rights of action rarely and only upon a finding that Congress specifically intended to provide such a right.  *See, e.g.*, *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148, 164-65 (2008); *Alexander* v. *Sandoval*, 532 U.S. 275, 286-87 (2001); *Va. Bankshares*, 501 U.S. at 1102-04;

---

[1] Section 14(a) provides, in relevant part:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n(a)(1).

6

*Touche Ross & Co.* v. *Redington*, 442 U.S. 560, 578 (1979).  Absent clear congressional intent to create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander*, 532 U.S. at 286-87.  The prior "method for discerning and defining causes of action" applied in *Borak* – which focused on the "'congressional purpose' expressed by a statute" – is a dead letter.  *Alexander*, 532 U.S. at 287; *see also, e.g.*, *Stoneridge*, 552 U.S. at 164 ("Though the rule once may have been otherwise . . . it is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one.").

Consistent with the Supreme Court's refusal to expand the boundary established in *Mills* and *Borak*, the federal courts have repeatedly held that only voting stockholders have standing to assert claims under Section 14(a).  *See, e.g.*, *7547 Corp.* v. *Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 229-30 (5th Cir. 1994) ("we are unwilling to expand standing under section 14(a) . . . to interest-holders who are not qualified to vote"); *Tenet Healthcare Corp.* v. *Community Health Sys., Inc.*, 839 F. Supp. 2d 869, 872 (N.D. Tex. 2012) ("there is not evidence of congressional intent to grant standing for the target corporation . . . under Section 14(a)"); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 241 (S.D.N.Y. 2004) ("no class member who lacked voting rights has standing to assert a 14(a) claim").

The First Circuit's decision in *Royal Business Group., Inc.* v. *Realist, Inc.*, 933 F.2d 1056 (1st Cir. 1991), is directly on point.  The court in that case denied standing to a hostile bidder that had waged a proxy contest against incumbent management, finding "absolutely no hint in the language or structure of the statute, or in the legislative history, that Congress was concerned with the rights of proxy contestants as opposed to the rights of shareholders."  *Id.* at 1060-61.  The First Circuit denied standing even though the proxy contestant, unlike Mr. Okada, was also a current stockholder.  *See id.* at 1061-62 ("plaintiff's specific claim arises from its role as a proxy contestant, not from its role as a shareholder"; "we do not believe that standing can be conferred, without more, by the mere coincidence that a proxy contestant also enjoys shareholder status").

*Palumbo* v. *Deposit Bank*, 758 F.2d 113 (3d Cir. 1985), a case on which Mr. Okada relied at the February 15 hearing, lends no support to a claim that Mr. Okada has a private right of

action under Section 14(a). As the Fifth Circuit has explained, although the plaintiff in *Palumbo* claimed that he had been "ousted from his position as director via an allegedly misleading proxy statement," the plaintiff had a right of action under Section 14(a) because he was also the issuer's largest shareholder. *7547 Corp.*, 38 F.3d at 230 ("Palumbo's status as a shareholder with voting privileges cannot be overlooked."). To the extent that the court in *Palumbo* intended the case to have broader application, the holding is "contrary to the current direction of implied remedies," Thomas Lee Hazen, *The Law of Securities Regulation* § 10.3[2], as embodied in subsequent Supreme Court decisions like *Stoneridge*, *Alexander*, and *Virginia Bankshares*.[2]

Returning to this case, Mr. Okada has made no attempt to plead evidence that Congress intended to establish a private right of action under Section 14(a) in favor of a non-stockholder director who is facing removal from the board. Nor could Mr. Okada make such a showing, as there is nothing in the language of the statute or its legislative history that reveals any such congressional intent. Accordingly, Mr. Okada does not have a private right of action under Section 14(a).[3]

---

[2] Wynn Resorts has found only a single case in which a court recognized an implied right of action under Section 14(a) for a proxy contestant that was not a stockholder. *See Capital Real Estate Investors Tax Exempt Fund Ltd. P'ship* v. *Schwartzberg*, 929 F. Supp. 105, 106-08 (S.D.N.Y. 1996). In *Schwartzberg*, however, the court applied the wrong purpose-based standard in assessing whether the plaintiff had a private right of action. *Id.* at 109 ("there are implied causes of action for violation of the antifraud provisions of the securities laws where they are necessary to achieve Congress' remedial purposes"); *cf. Touche Ross*, 442 U.S. at 578 ("[t]he invocation of the 'remedial purposes' of the 1934 Act is . . . unavailing"). The court did not even consider the issue the Supreme Court has declared to be "determinative" – whether "the statute Congress has passed . . . displays an intent to create . . . a private right [and] a private remedy." *Alexander*, 532 U.S. at 286. *Schwartzberg* is accordingly of no precedential value.

[3] In asking this Court to recognize a new private right of action under Section 14(a), it is Mr. Okada's burden to establish that Congress specifically intended to create such a cause of action for a non-stockholder in his position. As the Supreme Court has explained, "affirmative evidence of congressional intent must be provided *for* an implied remedy, not against it, for without such intent the essential predicate for implication of a private remedy simply does not exist." *Alexander*, 532 U.S. at 293 n.8 (emphasis in original; internal quotation marks omitted).

**CONCLUSION**

For all of the foregoing reasons, Wynn Resorts respectfully requests that the Court grant its motion and dismiss the Complaint with prejudice.

DATED this 19th day of February, 2013.

PISANELLI BICE PLLC

By:   /s/ James J. Pisanelli
James J. Pisanelli, Esq., Bar No. 4027
Todd L. Bice, Esq., Bar No. 4534
Debra L. Spinelli, Esq., Bar No. 9695
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada  89169

Paul K. Rowe, Esq. *(pro hac vice forthcoming)*
Bradley R. Wilson, Esq. *(pro hac vice forthcoming)*
S. Christopher Szczerban, Esq. *(pro hac vice forthcoming)*
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

Robert L. Shapiro, Esq. *(pro hac vice forthcoming)*
GLASER WEIL FINK JACOBS HOWARD
AVCHEN & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067

Attorneys for Wynn Resorts, Limited